1   Neil A. Goteiner (State Bar No. 083524)
        ngoteiner@fbm.com
2   Scott Andrews (State Bar No. 243690)
        sandrews@fbm.com
3   Farella Braun & Martel LLP
    235 Montgomery Street
4   San Francisco, CA  94104
    Telephone:   (415) 954-4400
5   Facsimile:   (415) 954-4480

6   Attorneys for Plaintiffs and Counter Defendants
    MONEX DEPOSIT COMPANY and
7   MONEX CREDIT COMPANY

8

9                   UNITED STATES DISTRICT COURT

10                      CENTRAL DISTRICT

11              (SOUTHERN DIVISION – SANTA ANA)

12

13  MONEX DEPOSIT COMPANY, et al.,    |   Case No. 8:09-CV-00287-JVS-RNBx

14              Plaintiffs,           |   **MEMORANDUM OF POINTS AND**
                                      |   **AUTHORITIES IN SUPPORT**
15         vs.                        |   **OF MOTION TO COMPEL**
                                      |   **ARBITRATION AND TO STAY**
16  JASON GILLIAM, et al.,            |   **COUNTERCLAIMS**

17              Defendants.           |   Date:       May 18, 2009
                                      |   Time:       1:30 p.m.
18                                    |   Location:   Courtroom 10C

19                                    |   The Hon. James V. Selna

20  AND RELATED COUNTECLAIMS.

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx

23587\1906954.1

# TABLE OF CONTENTS

Page

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

II.  STATEMENT OF FACTS.................................................................1

    A.  The Atlas Account Customer Agreements and Arbitration Clauses. .......................................................................................1

    B.  The Gilliams' Losses ............................................................3

    C.  Jason Gilliam's Counterclaims ............................................3

III.  ARGUMENT ......................................................................................4

    A.  The Court's Only Task On This Motion Is To Determine Whether There Is A Valid Arbitration Agreement Between Gilliam and Monex, and There Is. ......................................4

        1.  The Arbitration Agreements Here Are Presumptively and Actually Valid.........................................................5

    B.  The Arbitrator Decides Whether Gilliam's Counterclaims Are Arbitrable. ......................................................................6

        1.  The Arbitration Clauses Cover Gilliam's Counterclaims ..........7

    C.  The Court Must Stay The Counterclaims Pending the Parties' Arbitration. ............................................................8

    D.  The Court Should Sever Gilliam's Arbitrable Counterclaims From Monex's Claims. .........................................................9

IV.  CONCLUSION ................................................................................10

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx          - i -          23587\1906954.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Pitney Bowes, Inc.*,
  No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005) .............. 7

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440, 126 S. Ct. 1204 (2006) ...................................................... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ................................................................. 4

*Cronin v. Monex Deposit Co.*,
  No. SACV 08-1297 DOC (MLGx), 2009 WL 412023 (C.D. Cal.
  Feb. 17, 2009) ................................................................................ 1, 5, 7, 8

*Daisy Mfg. Co. v. NCR Corp.*,
  29 F.3d 389 (8th Cir. 1994) ..................................................................... 4

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213, 105 S. Ct. 1238 (1985) ................................................. 9, 10

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938, 115 S. Ct. 1920 (1995) ..................................................... 6

*Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*,
  118 F.3d 619 (8th Cir. 1997) ................................................................... 6

*Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*,
  981 F.2d 752 (5th Cir. 1993) ................................................................... 9

*Packeteer Inc. v. Valencia Sys., Inc.*,
  No. C-06-07342 RMW, 2007 WL 707501 (N.D. Cal. Mar. 6, 2007) ........... 7

*Perry v. Thomas*,
  482 U.S. 483, 107 S. Ct. 2520 (1987) ..................................................... 5

*Poponin v. Virtual Pro, Inc.*,
  No. C 06-4019 PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006)............. 7

*Shearson/Am. Exp., Inc. v. McMahon*,
  482 U.S. 220, 108 S. Ct. 2332 (1987) ..................................................... 8

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
  489 U.S. 468, 109 S. Ct. 1248 (1989) ..................................................... 4

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                    - ii -                    23587\1906954.1

1

## STATE CASES

2

*Cione v. Foresters Equity Servs., Inc.*,
    58 Cal. App. 4th 625, 68 Cal. Rptr. 2d 167 (Cal. Ct. App. 1997) ................4

3

4

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547, 21 Cal. Rptr. 3d 322 (Cal. Ct. App. 2004) ...............7

5

*Hayes Children Leasing Co. v. NCR Corp.*,
    37 Cal. App. 4th 775, 43 Cal. Rptr. 2d 650 (Cal. Ct. App. 1995) ................4

6

7

*Vianna v. Doctors Mgmt.*,
    27 Cal. App. 4th 1186, 33 Cal. Rptr. 2d 188 (Cal. Ct. App. 1994) ...............4

8

## FEDERAL STATUTES

9

10

9 U.S.C. §§ 1–16.............................................................................................4

9 U.S.C. § 2 .....................................................................................................4

11

9 U.S.C. § 3 .................................................................................................1, 9

12

9 U.S.C. § 4 .................................................................................................1, 5

13

15 U.S.C. § 80b-15 ......................................................................................7, 8

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Monex Deposit Company and Monex Credit Company (collectively, "Monex") seek an order compelling arbitration and staying the counterclaims of defendant Jason Gilliam ("Gilliam"), pursuant to 9 U.S.C. §§ 3–4.  All of Gilliam's counterclaims for trading losses are subject to binding arbitration under two March 24, 2008, account agreements that govern all disputes arising out of defendants' transactions with Monex.  Each account agreement, both of which Gilliam signed, contained the exact same arbitration terms.  Judge David O. Carter of this court, in February, enforced Monex arbitration agreements that are identical, in all relevant clauses, to those between Gilliam and Monex.  *Cronin v. Monex Deposit Co.*, No. SACV 08-1297 DOC (MLGx), 2009 WL 412023, at *9 (C.D. Cal. Feb. 17, 2009).  Monex's claims against defendants are not affected by the arbitration agreement. The Court should, under well-established law, sever Gilliam's counterclaims and send them to binding arbitration.

## II.    STATEMENT OF FACTS

Monex Deposit Company ("MDC") deals in precious metals.  (*See* Mar. 20, 2009 Decl. of Louis Carabini ("Carabini Decl."), Dkt. 13, ¶ 4.)  Its affiliate, Monex Credit Company ("MCC"), lends money to customers for their purchases of metals from MDC.  (*Id.* ¶¶ 5, 7.)  Both companies are located in Newport Beach, California.  (*Id.* ¶¶  3, 6.)

### A.    The Atlas Account Customer Agreements and Arbitration Clauses.

On March 25, 2008, Richard and Jason Gilliam opened their Atlas Account with Monex.  (Decl. of Neil A. Goteiner In Supp. of Mot. To Compel Arbitration and to Stay Countercls. ("Goteiner Decl."), Ex. A at 14, 30.)[1]  Opening an Atlas

---

[1] All citations to exhibits are to exhibits to the Declaration of Neil A. Goteiner In Support of Motion to Compel Arbitration and To Stay Counterclaims ("Goteiner Decl.") unless otherwise indicated.  Pin citations to pages of Exhibit A, the Customer Agreements, are to the original pagination of the Agreements.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx

- 1 -

23587\1906954.1

1   Account required signing two agreements:  (1) a Purchase and Sale Agreement
2   with MDC and (2) a Loan, Security and Storage Agreement with MCC
3   (collectively, the "Customer Agreements.")  (*See* Ex. A.)

4        Here, the parties repeatedly agreed in writing that arbitration would govern
5   any and all disputes arising out of transactions pursuant to the Customer
6   Agreements.  For example, the following language is contained in Section 15.11 of
7   the MDC Purchase and Sale Agreement:

8            The parties agree that any and all disputes, claims or
9            controversies arising out of or relating to any transaction
10           between them or to the breach, termination, enforcement,
11           interpretation or validity of the Agreement, **including the**
12           **determination of the scope or applicability of this**
13           **agreement to arbitrate, shall be subject to the terms of**
14           **the Federal Arbitration Act and shall be submitted to**
15           **final and binding arbitration before JAMS**, or its
16           successor, in Orange County, California, in accordance
17           with the laws of the State of California for agreements
18           made in and to be performed in California.

19  (Ex. A at 9, § 15.11 [emphasis added].)  The remainder of that subsection explains
20  in great detail the additional terms governing arbitration.  (*See id.* at 9–12.)  The
21  Loan, Security and Storage Agreement with MCC contains the same arbitration
22  language.  (*Compare id.* at 9–12, § 15.11 [MDC contract] to *id.* at 24–27, § 31
23  [MCC contract].)

24       In addition to the above discussion in both account agreements, there is bold
25  language immediately above the signature block in both the MDC and MCC
26  account agreements which states:

27           **I have carefully read and understand the foregoing.  I**
28           **understand that I am agreeing to submit all disputes,**

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                - 2 -                23587\1906954.1

1          **claims and controversies arising out of or related to,**

2          **my transactions with [Monex] or this agreement to**

3          **binding arbitration before JAMS . . . I understand that**

4          **by agreeing thereto I am also agreeing to . . . give up**

5          **my rights to a jury trial of any claims.**

6    (Ex. A at 14, § 16(n) [MDC contract], and at 29, § 36(n) [MCC contract] [bold in

7    originals].)  On March 25, 2008, Jason Gilliam and his father signed the

8    agreements.  (*Id*. at 14, 30)

9          **B.     The Gilliams' Losses.**

10         In conjunction with his father Richard, and pursuant to the Customer

11   Agreements used to open their Atlas Account, Jason Gilliam invested in precious

12   metals with Monex.  (Carabini Decl. ¶ 10.)  In 2008, he and his father lost a total of

13   approximately $32,600 in transactions made under the Customer Agreements.

14   (*Id.* ¶ 11.)  The Gilliams asked for a payment of $5,580 from Monex to cover a

15   portion of the losses for which they said Monex was to blame.  (*Id.*)  Monex

16   offered them half that amount, $2,790.  (*Id.*)  The Gilliams declined the offer.  (*Id.*)

17         **C.     Jason Gilliam's Counterclaims.**

18         On March 15 of this year, Gilliam filed his Answer and, in a separate

19   document, his counterclaims, asserting six causes of action against Monex, all

20   arising out Atlas Account transactions with Monex.  The counterclaims allege

21   RICO violations, breach of fiduciary duty, and negligence, and seek declaratory

22   relief arising out of alleged failure to register as an investment adviser, illegal

23   contract, and fraud in the inducement.  (Countercl., Dkt. 6.)  He also requests

24   damages, treble damages, costs, and attorneys' fees.

25         Monex's attorneys invited Gilliam to dismiss the counterclaims and file in

26   arbitration because all of his allegations arise from his transactions with Monex

27   pursuant to the Customer Agreements and therefore are subject to the twice-stated

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                    - 3 -                              23587\1906954.1

1   and signed arbitration clauses.  (Goteiner Decl. ¶ 4.)  Gilliam declined, requiring

2   Monex to file this motion.  (*Id*. ¶¶ 4–9.)

3   **III.   ARGUMENT**

4       **A.   The Court's Only Task On This Motion Is To Determine Whether**
        **There Is A Valid Arbitration Agreement Between Gilliam and**
5       **Monex, and There Is.**

6           In considering whether to compel arbitration, a court may only inquire as to

7   whether:  (1) there is an agreement to arbitrate; (2) there are arbitrable claims; and

8   (3) there has been a waiver of the right to arbitrate by the moving party or other

9   defense to arbitration.  *See Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th

10  Cir. 1994); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126,

11  1130 (9th Cir. 2000).

12          Accordingly, an application for an order compelling arbitration "should be

13  granted unless it may be said with positive assurance that the arbitration clause is

14  not susceptible of an interpretation that covers the asserted dispute."  *Cione v.*

15  *Foresters Equity Servs., Inc*., 58 Cal. App. 4th 625, 642, 68 Cal. Rptr. 2d 167, 177

16  (Cal. Ct. App. 1997).  Any doubts or ambiguity concerning the existence or

17  applicability of an arbitration agreement to a particular dispute should be settled in

18  favor of arbitration.  *Id*.; *see also Vianna v. Doctors Mgmt.*, 27 Cal. App. 4th 1186,

19  1189, 33 Cal. Rptr. 2d 188, 189 (Cal. Ct. App. 1994); *Hayes Children Leasing Co.*

20  *v. NCR Corp.*, 37 Cal. App. 4th 775, 788, 43 Cal. Rptr. 2d 650, 658 (Cal. Ct. App.

21  1995).

22          Additionally, under settled case law interpreting the Federal Arbitration Act,

23  9 U.S.C. §§ 1–16 ("FAA"), courts must enforce arbitration clauses in private

24  contracts involving maritime and interstate commerce.  9 U.S.C. § 2; *see also Volt*

25  *Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468,

26  472, 109 S. Ct. 1248, 1252 (1989).  Enforcement of arbitration clauses under the

27  FAA is important because the Act reflects "liberal federal policy favoring

28  arbitration agreements, notwithstanding any state substantive or procedural policies

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                - 4 -                        23587\1906954.1

1    to the contrary." *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525

2    (1987).[2]

3        **1.    The Arbitration Agreements Here Are Presumptively and**
          **Actually Valid.**

4

5        Arbitration agreements, like those at issue here, are presumptively valid

6    under the FAA:

7            A party aggrieved by the alleged failure, neglect, or refusal of

8            another to arbitrate under a written agreement for arbitration

9            may petition any United States district court which, save for

10           such agreement, would have jurisdiction under Title 28, in a

11           civil action or in admiralty of the subject matter of a suit arising

12           out of the controversy between the parties, for an order directing

13           that such arbitration proceed in the manner provided for in such

14           agreement. . . .  **The court shall hear the parties, and upon**

15           **being satisfied that the making of the agreement for**

16           **arbitration or the failure to comply therewith is not in issue,**

17           **the court shall make an order directing the parties to**

18           **proceed to arbitration** in accordance with the terms of the

19           agreement.

20   9 U.S.C. § 4 (emphasis added).

21       Here, there is no question that the Gilliams entered into contracts with

22   Monex that included valid, enforceable agreements to arbitrate any disputes

23   "arising out of or relating to any transaction between them or to the breach,

24   termination, enforcement, interpretation or validity of the Agreement, including the

25   _____

26   [2] The arbitration agreement before Judge Carter in *Cronin v. Monex Deposit Co.*,
     No. SACV 08-1297 DOC (MLGx), 2009 WL 412023 (C.D. Cal. Feb. 17, 2009),
27   applied the California Arbitration Act.  The CAA and the FAA, however, are
     similar in the strong presumptions in favor of enforcement of arbitration
28   provisions.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                    - 5 -                    23587\1906954.1

1   determination of the scope or applicability of this agreement to arbitrate." (*E.g.*,

2   Ex. A at 9, § 15.11.)  The Customer Agreements were signed by Gilliam and his

3   father. (*Id.* at 14, 30.)  Indeed, Gilliam concedes their existence in his

4   counterclaims and merely contests their enforceability. (Countercl. at 6:16–20.)

5
6   **B.   The Arbitrator Decides Whether Gilliam's Counterclaims Are Arbitrable.**

7       Because the Customer Agreements are valid and enforceable, the express

8   terms of the arbitration clauses require the arbitrator, and not a court, to resolve

9   issues relating to arbitrability.  Where the parties clearly and unmistakably assign

10  determination of an arbitration agreement's scope to the arbitrator, the court must

11  allow the arbitrator to decide that issue. *See First Options of Chi., Inc. v. Kaplan*,

12  514 U.S. 938, 944–45, 115 S. Ct. 1920, 1924 (1995); *see also Fleet Tire Serv. of N.*

13  *Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) (arbitration

14  clause "arising out of or relating to" means arbitrator determines scope of clause).

15      Here, the arbitration clauses provide that disputes over the "interpretation or

16  validity of this Agreement, including the determination of the scope or applicability

17  of this agreement to arbitrate shall be submitted to final and binding arbitration."

18  (*E.g.*, Ex. A at 9, § 15.11(a) [Purchase and Sale Agreement].)  Thus the agreements

19  on their face require disputes over the scope of the arbitration clauses to be

20  submitted to arbitration.

21      JAMS rules, which the arbitration clauses expressly incorporate by

22  reference, similarly provide that the arbitrator determines the scope of arbitrability.[3]

23  (*See id.* at 10, § 15.11(d), and at 25, § 31.4 [clauses incorporating JAMS rules].)

24  Courts enforce such rules "where the parties' agreement to arbitrate includes an

25  _____

26  [3] Rule 11(c) of JAMS Comprehensive Arbitration Rules provides: "Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and

27  who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and

28  arbitrability issues as a preliminary matter." (Ex. B.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                    - 6 -                    23587\1906954.1

1   agreement to follow a particular set of arbitration rules . . . that provide for the

2   arbitrator to decide arbitrability."  *Poponin v. Virtual Pro, Inc.*, No. C 06-4019

3   PJH, 2006 WL 2691418, at *9 (N.D. Cal. Sept. 20, 2006).[4]

4           **1.      The Arbitration Clauses Cover Gilliam's Counterclaims.**

5           Here, the arbitration clauses require arbitration of "any and all disputes,

6   claims or controversies arising out of or relating to any transaction" between the

7   Gilliams and Monex.  (*E.g.*, Ex. A at 9, § 15.11(a).)  The Honorable David O.

8   Carter of this court recently interpreted identical arbitration language contained in a

9   Monex customer agreement and ordered arbitration.  *Cronin*, 2009 WL 412023, at

10  *9.  There, the court considered the applicability of the arbitration clause to

11  transactions the plaintiff claimed were pursuant to a later oral agreement — more

12  challenging facts than presented here.  *Id.* at *5.  Judge Carter concluded the

13  arbitration language was "extremely broad" and that "the plain language of the

14  contract clearly and unmistakably indicates that the arbitrator must decide the

15  scope and applicability of the arbitration clause to the parties' dispute."  *Id.* at *6.

16  The court granted the Monex parties' motion to compel arbitration of not only

17  claims related to the oral agreement, but also claims of fraud, breach of contract,

18  and negligence related to the underlying written agreements.

19          Nothing in Gilliam's counterclaims takes his allegations outside of the reach

20  of the arbitration agreement.  The counterclaims variously purport to:  (1) challenge

21  the validity of the Customer Agreements based on 15 U.S.C. § 80b-15, fraudulent

22  inducement and illegality of contract; and (2) seek damages based on purported

23  ─────────────────────
    [4] *See also Packeteer Inc. v. Valencia Sys., Inc.*, No. C-06-07342 RMW, 2007 WL
24  707501, at *2 (N.D. Cal. Mar. 6, 2007) (finding "that because it incorporates the
    rules of the American Arbitration Association, the agreement to arbitrate is
25  sufficiently broad as to give the arbitrator the authority to determine arbitrability of
    issues."); *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700,
26  at *2–*4 (N.D. Cal. May 4, 2005) (citing with approval *Dream Theater, Inc. v.
    Dream Theater*, 124 Cal. App. 4th 547, 557, 21 Cal. Rptr. 3d 322, 329 (Cal. Ct.
27  App. 2004) (holding that clause specifying that arbitration would be "in accordance
    with the AAA Commercial Arbitration Rules" constituted clear and unmistakable
28  evidence that parties intended arbitrator rather than court determine arbitrability)).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                      - 7 -                      23587\1906954.1

1   breach of fiduciary duty, negligence, and violations of RICO statutes.  But

2   regardless of how creatively Gilliam tries to cast his claims against Monex, what is

3   abundantly clear is that they all hinge on the Gilliams' investments and transactions

4   made pursuant to the Customer Agreements.  For example, one counterclaim

5   asserts that Monex's alleged RICO violations caused him to "rel[y] on

6   counterdefendants' advertisements, promotional activities, and financial advice, to

7   invest money with counterdefendants only to end up losing everything . . . ."

8   (Countercl. ¶ 12.)  Similarly, Gilliam's request for declaratory relief under

9   15 U.S.C. § 80b-15 asserts that "Counterdefendants acted as Jason Gilliam's

10   investment advisors, and actively lobbied, encouraged, and advised him to make

11   leveraged trades in their commodities."  (*Id*. ¶ 14.)

12          Such direct challenges to the Customer Agreements, arising as they do out of

13   losses incurred on investments the Gilliams made pursuant to those agreements,

14   must be arbitrated in the first instance.  *See, e.g.*, *Cronin*, 2009 WL 412023, at *6.

15   As the Supreme Court has stated, "[U]nless the challenge is to the arbitration

16   clause itself, the issue of the contract's validity is considered by the arbitrator in the

17   first instance."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46,

18   126 S. Ct. 1204, 1209 (2006).  Even challenges based on purported violations of

19   federal statutes must be arbitrated.  *See, e.g.*, *Shearson/Am. Exp., Inc. v. McMahon*,

20   482 U.S. 220, 221, 108 S. Ct. 2332, 2335 (1987) ("RICO claim is also arbitrable

21   under the Arbitration Act.").  Plainly, all of Gilliam's claims are arbitrable.  Even if

22   Gilliam argues to the contrary, the claims must go the arbitrator because the parties

23   expressly reserved that issue for the arbitrator to decide, not a court.

24          **C.    The Court Must Stay The Counterclaims Pending the Parties'**

25   **Arbitration.**

26          The FAA requires that actions subject to arbitration be stayed pending

27   resolution in the arbitration forum:

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx                    - 8 -                    23587\1906954.1

1      If any suit or proceeding be brought in any of the courts of the

2      United States upon any issue referable to arbitration under an

3      agreement in writing for such arbitration, the court in which

4      such suit is pending, upon being satisfied that the issue involved

5      in such suit or proceeding is referable to arbitration under such

6      an agreement, shall on application of one of the parties stay the

7      trial of the action until such arbitration has been had in

8      accordance with the terms of the agreement, providing the

9      applicant for the stay is not in default in proceeding with such

10      arbitration.

11  9 U.S.C. § 3.  As discussed above, the dispute raised in the counterclaims remains

12  properly arbitrable pursuant to the parties' agreements.  "If the issues in a case are

13  within the reach of the agreement, the district court has no discretion under [9

14  U.S.C.] section 3 to deny the stay."  *Hornbeck Offshore (1984) Corp. v. Coastal*

15  *Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).  Therefore, this Court must stay

16  the counterclaims in favor of the parties' arbitration.

17
      **D.**    **The Court Should Sever Gilliam's Arbitrable Counterclaims From Monex's Claims.**
18

19      Under the FAA, and case law interpreting it, claims that are arbitrable can be

20  severed from other claims, even if judicial "inefficiencies" would result.  In *Dean*

21  *Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217–21, 105 S. Ct. 1238, 1240–42

22  (1985), the Supreme Court considered whether arbitrable claims, and federal

23  claims that the defendant did not contest were properly before the district court,

24  could be tried separately before an arbitrator and before the court, respectively.

25  The Supreme Court concluded that "the Arbitration Act requires district courts to

26  compel arbitration of pendent arbitrable claims when one of the parties files a

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx

- 9 -

23587\1906954.1

1  motion to compel, even where the result would be the possibly inefficient

2  maintenance of separate proceedings in different forums." *Id*. at 217.[5]

3      There is no reason to divert from well-established doctrine requiring the

4  Court to sever defendants' account-based claims and send them to arbitration,

5  while allowing Monex's claims grounded in defendants' extortion scheme to

6  proceed in this court.

7  **IV.  <u>CONCLUSION</u>**

8      For the reasons stated, Monex asks the Court to compel arbitration of

9  Gilliam's counterclaims and to stay those counterclaims pending arbitration.

10

11  Dated:  April 21, 2009        FARELLA BRAUN & MARTEL LLP

12

13          By:/s/ Neil A. Goteiner

14              Neil A. Goteiner

15          Attorneys for Plaintiffs and Counter Defendants MONEX DEPOSIT COMPANY and

16          MONEX CREDIT COMPANY

17

18

19

20

21

22

23

24

25

26

---

[5] Here, there is not even the possibility of inefficiency since Monex's complaint and the injunctive relief against Gilliam's extortion and defamation scheme, including his fraudulent website allegations of firm-wise fraud by Monex, have nothing to do with his counterclaims against Monex.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA ISO MOT. COMPEL ARBITRATION
Case No. 8:09-CV-00287-JVS-RNBx   - 10 -   23587\1906954.1