## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

| Present: The Honorable | James V. Selna | | |
|---|---|---|---|

| Nancy K. Boehme | None | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (In Chambers) Order re Motions for Summary Judgment and Motion for Summary Adjudication

Plaintiffs Monex Deposit Company and Monex Credit Company (collectively, "Monex") move for summary judgment and/or summary adjudication pursuant to Federal Rule of Civil Procedure 56 on its attempted extortion and intentional interference with prospective economic advantage claims. Defendants Richard Gilliam and Jason Gilliam (collectively, "the Gilliams"),[1] who are proceeding *pro se*, oppose the motion. Jason Gilliam moves for summary judgment on Monex's cyberpiracy, trade secret misappropriation, and attempted extortion claims. Richard Gilliam moves for summary judgment on Monex's defamation, trade libel, interference with contract, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, civil racketeering, unfair business practices, and unfair competition claims.

I.     Legal Standard

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of a claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim.

---

[1] For clarity, the Court uses the full names of Richard Gilliam and Jason Gilliam throughout.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. Fair Hous. Council v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

II.   Discussion

The Court will consider each party's motion separately, taking into account

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

evidence presented in cross-motions where applicable.[2] First, however, the Court will consider each party's evidentiary objections.

    A. <u>Evidentiary</u> <u>Objections</u>

    The Gilliams object to the introduction of various pieces of evidence submitted with Monex's summary judgment motion as being in violation of California Evidence Code section 1152. Although the California Evidence Code does not apply in this Court, even under the similar Federal Rule of Evidence 408(a)(1) this evidence would not be inadmissible. This is because any alleged settlement communications made by the Gilliams are not being introduced by Monex to prove that the Gilliams are liable for the same claims that were the subject of the settlement communications.

    Monex objects to much of the evidence submitted by the Gilliams in opposition to its motion. Although the Court has evaluated the evidence Monex objects to, it has not relied upon this evidence as support for its decision.[3] Therefore, the Court declines to rule on Monex's evidentiary objections not implicated by the basis for this Order.

    B. <u>Monex's</u> <u>Summary</u> <u>Judgment</u> / <u>Summary</u> <u>Adjudication</u> <u>Motion</u>

    i. <u>Attempted</u> <u>Extortion</u>

---

    [2] Monex and Jason Gilliam have both moved for summary judgment on the attempted extortion claim. Monex and Richard Gilliam have both moved for summary judgment on the intentional interference with prospective economic advantage claim.

    [3] The Court does cite paragraph five of Richard Gilliam's Declaration in Support of Opposition to Monex's Motion for Summary Judgment and paragraph two of Jason Gilliam's Declaration in Support of Opposition to Monex's Motion for Summary Judgment. Monex has made objections to parts of these paragraphs. The Court has not cited or relied upon those parts of the paragraphs that Monex has objected to. Monex also objects to parts of the declarations submitted by the Gilliams from people that allegedly contacted them regarding their losses with Monex and to a declaration by a former Monex employee. The Court has not cited or relied upon those parts of those declarations that Monex has objected to.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

This Court has previously held in this case that a claim for attempted extortion is implied from California Penal Code sections 523 and 519. (See Docket No. 174.) California Penal Code section 523 states:

> Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat.

Cal. Penal Code § 523. The threats specified in California Penal Code section 519 are: "1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or, 2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or, 3. To expose, or to impute to him or them any deformity, disgrace or crime; or, 4. To expose any secret affecting him or them." As a civil tort action, Monex agrees that it must also establish injury and causation. In sum, Monex must show that (1) the Gilliams sent or delivered to Monex written correspondence; (2) that this writing expressed or implied a threat listed in section 519; (3) the Gilliams intended to extort money or property from Monex; (4) Monex suffered harm; and (5) the harm was caused by the Gilliams.

Monex argues that the Gilliams have "effectively concede[d] that they are liable for extortion and intentional interference with prospective economic advantage" because "[t]heir brief does not argue that there are disputes of material fact going to the elements of those two torts." (Reply Br. ISO Monex MSJ 1.) Although this is a fair characterization of the Gilliams' Opposition brief, it ignores the Gilliams' Statement of Genuine Issues (Docket No. 265) submitted along with the Opposition. Given the Gilliams' *pro se* status, the Court will consider the evidence the Gilliams point to in the Statement of Genuine Issues, despite their failure to highlight these arguments in the Opposition brief.[4] The Court will first evaluate whether there are any genuine issues of material fact with respect to the elements of attempted extortion and then will consider whether the litigation privilege applies.

---

[4] The Gilliams do make a cursory reference to the Statement of Genuine Facts at the end of their brief. (See Opp'n Br. to Monex MSJ 15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

### 1. The Gilliams Sent or Delivered to Monex Written Correspondence

Monex argues that this element was established when the Gilliams traveled to Monex on February 13, 2009 and Jason Gilliam physically delivered a letter with a demand and a "Plan of Action" to Monex employee Harvey Kochen. (See Kochen Decl. ISO Monex MSJ ¶ 5, Ex. A.) Although the letter was signed by Steven Bowman[5] and not the Gilliams (see id.), Jason Gilliam has admitted that he reviewed the letter and "Plan of Action" before it was delivered (J. Gilliam Dep. 25:2-20), approved of everything said in the letter (id. 52:16-25), and adopted the strategy outlined by Steven Bowman in the letter (id. 329:11-20).

The Gilliams argue that it was Steven Bowman that wrote the letter and not them. (See Statement of Genuine Issues 8-9.) In support of this argument, Jason Gilliam has submitted a declaration that appears to contradict his prior deposition testimony. (See J. Gilliam Decl. ISO Opp'n to Monex MSJ ¶ 3.) This "sham" evidence does not create a genuine issue of material fact. See, e.g., Nelson v. City of Davis, 571 F.3d 924, 927-28 (9th Cir. 2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991))). The Gilliams do not point to any other evidence that would create a genuine issue of material fact on this element with respect to Jason Gilliam. The Court finds that Jason Gilliam delivered a written correspondence, in the form of the letter and "Plan of Action" to Monex.

As for Richard Gilliam, the Court finds that there is a genuine issue with respect to whether he sent or delivered a written communication to Monex. Monex argues that Richard Gilliam's driving of Jason Gilliam to Monex to deliver the letter and "Plan of Action," along with his general understanding of what was in the letter (see R. Gilliam Dep. 66:1-22), is sufficient to establish that he delivered the written communication. Although Richard Gilliam admits to driving Jason Gilliam to Monex to deliver the letter (id. 63:17-22), he initially did not go inside the building and only went inside after Jason had handed over the letter to Harvey Kochen (see Kochen Decl. ISO Monex MSJ ¶¶ 5-6). Richard Gilliam has declared that he never read the letter and was only giving his son a

---

[5] Steven Bowman is a defendant in this suit, but has not appeared or responded to Monex's claims. He represented himself as a lawyer to both the Gilliams and Monex. (J. Gilliam Dep. 340:7-23; M. Carabini Decl. ISO Monex MSJ ¶ 4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

ride. (R. Gilliam Decl. ISO Opp'n to Monex MSJ ¶ 3.) This is consistent with his deposition testimony. (See R. Gilliam Dep. 63:14-66:22.) Harvey Kochen, however, has declared that Richard "replied affirmatively" when asked if he joined in Jason's demands. (Kochen Decl. ISO Monex MSJ ¶ 10.) The Court believes that this conflicting evidence is sufficient to establish a genuine issue with respect to whether Richard Gilliam delivered the letter and "Plan of Action."

### 2. The Writing Expressed or Implied a Threat Listed in Section 519

Monex argues that there is no genuine issue that the writing expressed or implied a threat listed in section 519. The Court agrees. The letter and "Plan of Action" explicitly threatened to accuse and expose Monex of crimes. (See Kochen Decl. ISO Monex MSJ, Ex. A.) For example, the letter and "Plan of Action" state that various governmental agencies and news outlets would be notified of "the criminal activities perpetrated daily by Monex," including among other things, that it "resells futures," "speculates against clients," and "knowingly and intentionally defrauds its clients." (Id.) Additionally, the letter and "Plan of Action" explicitly threatened to expose Monex secrets, such as a Monex "Position Report" document. The Gilliams' only response to the evidence supporting this element is that they were not the authors of the letter, but rather that Steven Bowman was. (See Statement of Genuine Issues 8-9.) This argument has already been dealt with above. Therefore, the Court finds that there is no genuine issue with respect to this element and that the letter and "Plan of Action" did contain threats listed in section 519.

### 3. The Gilliams Intended to Extort Money or Property from Monex

Monex argues that there is no genuine issue that the Gilliams intended to improperly use fear created by the section 519 threats and therefore intended to extort money from Monex. The Court agrees. The intent element overlaps significantly with the Gilliams' assertion of the litigation privilege defense. The Gilliams argue that the communication delivered to Monex and the demand contained in it cannot be the basis of an extortion claim because it was related to litigation, potentially in the form of a class action, that they contemplated against Monex. In other words, the Gilliams maintain that the letter and "Plan of Action" was effectively a settlement demand and not an extortionate communication. However, the Gilliams have failed to present or identify evidence establishing that they had an intention to bring suit against Monex at the time

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

the written communication was delivered.

The letter and "Plan of Action" contain contradictory statements about the potential for litigation against Monex. Monex focuses on the following statement: "The result is the compilation of a devastating case against Monex that will carry great weight across a number of legal venues, which doesn't interest me . . . ." (Kochen Decl. ISO Monex MSJ, Ex. A.) Monex argues that the phrase "doesn't interest me" shows that the author of the letter was not interested in actually bringing a suit against Monex. However, the letter and "Plan of Action" contains other statements that do indicate an intent to sue Monex. For example, the letter states:

> I have more than enough evidence and testimony to prove that you are in total breach of the Atlas Agreement and your arbitration clause will collapse before the federal RICO class action lawsuit that will include thousands of plaintiffs once the story breaks in the media.

(Id.) The letter also mentions 234 individuals had Monex-related loses "north of $20 million" and that the author sought "$10 million as a partial recovery to distribute amongst the 234 people." (Id.) The "Plan of Action" also makes many references to litigation against Monex. It describes two "former Monex account reps" that are "willing to testify in open court." (Id.) MonexFraud.com is described as "a central hub for . . . building a federal RICO / class action effort against Monex." (Id.) It also contains a section describing the details of a potential "Federal Class Action/RICO Lawsuit" against Monex and other entities. (Id.)

Monex argues that the statements in the letter and "Plan of Action" suggesting an intent to litigate were fabrications, thus removing any doubt as to Jason Gilliam's intent. The Court agrees. Jason Gilliam has admitted that there were never 234 people seeking recovery from Monex. (J. Gilliam Dep. 56:3-57:15.) Jason Gilliam admitted that 184 of the people came from a internal Monex "Position Report" document listing these investors. (Id. 53:8-11.) None of these 184 people asked Jason Gilliam to represent them (id. 56:10-16), and Jason Gilliam did not know that they wanted any money from Monex (id. 56:17-19). As for the remaining fifty people, Jason Gilliam admitted that he had not spoken to all of these fifty people (id. 55:22-23) and that he did not have any documented proof of their losses (id. 57:16-58:4). Jason Gilliam also refused to identify these people at his deposition. (Id. 54:3-55:2.) Jason Gilliam has subsequently declared that fifty-three

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

people contacted him via a form on MonexFraud.com between January 23, 2009 and March 5, 2009. (J. Gilliam Decl. ISO Opp'n to Monex MSJ ¶ 2.) He has also submitted declarations from seven of these people indicating that they were contemplating a lawsuit against Monex with Jason Gilliam. However, this evidence does not provide support for the statements in the letter referencing 234 people or the amount of money demanded from Monex, which was far in excess of the losses allegedly incurred by these seven people, the Gilliams, and Steven Bowman.

The reference to two former Monex account representatives that were willing to testify regarding Monex's allegedly illegal activities is also unsupported by the evidence. Jason Gilliam produced for deposition only one former Monex employee, Thomas La Parne.[6] The Court has reviewed La Parne's deposition transcript and agrees with Monex that La Parne's testimony does not support the allegations made in the letter and "Plan of Action" regarding Monex's allegedly illegal conduct. (See Docket No. 76, La Parne Dep.; see also Docket No. 70, Monex's Preliminary Injunction Reply Br. 12-22.) Likewise, the statement that there was evidence that Monex was in breach of the Atlas Agreement is unsupported in the record.

The reference to MonexFraud.com as "a central hub for . . . building a federal RICO / class action effort against Monex" is undermined by Jason Gilliam's admission that his "mission was to destroy Monex completely through a relentless marketing and awareness campaign." (J. Gilliam Dep. 81:11-14.) This campaign was conducted on MonexFraud.com. The letter itself references the "damage done" to Monex by the website's "marketing efforts." (See Kochen Decl. ISO Monex MSJ, Ex. A.) It is clear that the primary, if not only, purpose of the website was to harm Monex by posting negative information about the company.

Furthermore, there is no evidence to support the use of the website as a central hub for a class action effort because there is no evidence establishing any class action effort against Monex. Although the letter does reference the possibility of a class action suit against Monex, no such suit has ever been brought and Jason Gilliam has admitted he

---

[6] Jason Gilliam has now submitted a declaration from Gerald Clifton, who was a Monex employee from 1978 to 1983, recounting alleged Monex practices from the early 1980s. The Court does not see how this evidence is relevant to this case or to Monex's activities during the period the Gilliams invested in Monex.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

would not have joined a class action suit against Monex. (J. Gilliam Dep. 364:12-15.)

Monex also argues that subsequent statements by Jason Gilliam indicate that he did not intend to sue Monex. Monex points to the following excerpt from Jason Gilliam's deposition:

> Q Okay. And you know at this point in time, as you testified yesterday and you repeated today, you were clear that you were not going to get involved in any litigation with Monex. . . . That wasn't your objective, that's not what you were set up for, and that's not what you were going to do; correct?

> A Exactly. I was not going to do that. And I told these people that I really felt that they should, you know, find legal counsel somewhere else because I'm not qualified to give legal advice to people.

(J. Gilliam Dep. 339:18-340:6.) Monex also cites other answers Jason Gilliam provided in his deposition. When asked if he "was never interested in taking Monex to court" he replied "Yeah. I don't see court as being – I don't see it as a being a very effective venue." (Id. 81:3-10.) Jason Gilliam also said that he was not "in favor of" litigation because "it was going to be a huge battle that would take years." (Id. 83:6-15.) When asked whether he "intended to sue" he replied "Not me personally. I even told people don't even involve me." (Id. 215:7-12.) Monex also notes that Jason Gilliam stated that "I personally told people if there is a class action, you can count me out" after being asked if he was "planning a class action." (Id. 364:12-15.) The Court agrees with Monex that these statements indicate that Jason Gilliam did not intend to bring suit against Monex when he made the communication to Monex demanding payment.

Therefore, the Court finds that there is no genuine issue of material fact that Jason Gilliam intended to extort money or property from Monex.

As to Richard Gilliam, as there is a genuine issue with respect to whether he is personally responsible for the written communication delivered to Monex, his intent cannot be established on the basis of the letter alone at this stage. Monex argues that Richard Gilliam made demands similar to those in the letter and "Plan of Action" at a meeting with Monex employee Harvey Kochen. According to Kochen, Richard Gilliam met with him on March 19, 2009 and Richard Gilliam told him that "he and Jason

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

Gilliam [would] take down the www.MonexFRAUD.com website if Monex would pay them $20 million" and that the Gilliams "would use a portion of the $20 million they received from Monex to reimburse twenty former Monex customers." (Kochen Decl. ISO Monex MSJ ¶¶ 15, 17.) Richard Gilliam, however, has submitted a declaration disputing Harvey Kochen's characterization of the conversation. He denies that he "demanded any money on [his] own or anyone else's behalf." (R. Gilliam Decl. ISO Opp'n to Monex MSJ ¶ 5.) He further explains that his offer to influence Jason Gilliam to shut down his website "was based on the idea that it would be a settlement compromise if Monex agreed to settle the current lawsuit and pay the other victims the losses that they could prove." (Id.) Richard Gilliam also addresses the discussion of the $20 million: "Kochen brought up the $15 million figure, which my son had calculated as approximately what all the investors had lost, and I simply said that Monex's lawyer said it was 20." (Id.) The competing declarations of Richard Gilliam and Harvey Kochen are sufficient to preclude summary judgment with respect to Richard Gilliam's intentions. Furthermore, the Court does not find that Richard Gilliam's declaration is contradicted by his deposition testimony. (See R. Gilliam Dep. 91:14-24, 102:16-103:7, 133:3-24.) Additionally, Richard Gilliam's deposition statement that he thought he "had an idea of what was going on" when Jason Gilliam delivered the letter to Monex and that he believed it was about getting a "recovery" and "settl[ing] their differences" is insufficient on its own to establish he intended to extort Monex. (Id. 66:7-20.) Thus, there is a genuine issue of material fact as to whether Richard Gilliam intended to extort Monex.

### 4. Monex Suffered Harm

Monex argues that there is no genuine issue that the company was harmed by material on the MonexFraud.com website. The Court agrees. MonexFraud.com is related to the attempted extortion claim because the written communications to Monex stated that more negative information about the company would be posted to the website if the demand was not satisfied. (See Kochen Decl. ISO Monex MSJ, Ex. A.) Monex has submitted a declaration from John Barton, a former Monex customer, that states he closed his account and opened an account with a Monex competitor after reading the negative information about Monex on MonexFraud.com. (See Barton Decl. ISO Monex MSJ ¶¶ 2-7.) Monex has also submitted a declaration from Louis Carabini, the President of Comco Management Corp., which is a general partner of Monex Deposit Company, stating that Monex has many competitors and that he believed that MonexFraud.com was driving business away from Monex. (L. Carabini Decl. ISO Monex MSJ ¶¶ 16-21.) Furthermore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

Jason Gilliam in his deposition stated that he believed MonexFraud.com was hurting Monex. (J. Gilliam Dep. 202:17-203:25.) The Gilliams do not point to any evidence that would dispute the evidence provided by Monex that it was harmed by MonexFraud.com. The Court finds that there is no genuine issue with respect to this element and that Monex was harmed by MonexFraud.com. The Court does not, however, determine the exact amount of harm incurred by Monex.

### 5. The Harm Was Caused by the Gilliams

As Monex was harmed by the MonexFraud.com website, whoever was responsible for the website would be the cause of the harm. The Court agrees with Monex that it is undisputed that Jason Gilliam owned, operated, and contributed to the website. Jason Gilliam has admitted as much during his deposition. (J. Gilliam Dep. 26:21-27:18, 328:13-22.)

However, the Court finds there is a genuine issue of material fact with respect to whether Richard Gilliam also owned, operated, or contributed to the MonexFraud.com website. Monex argues that Richard Gilliam's admission that he conducted research on Monex for use on the website indicates that he operated the website with Jason Gilliam. (R. Gilliam Dep. 36:7-38:16.) Monex also points to Richard Gilliam's admission that he could influence his son about whether to take down the MonexFraud.com website. (Id. 102:16-25.) However, in this same deposition Richard Gilliam denied that he had the ability to alter the website or had wrote anything on the website. (Id. 27:22-28:9.) Richard Gilliam continues to assert that he was not involved with MonexFraud.com, that he did not own, operate, publish any articles on it, or market it. (R. Gilliam Decl. ISO Opp'n to Monex MSJ ¶ 23.) This conflicting evidence indicates that there is a genuine issue as to whether Richard Gilliam owned, operated, or contributed to the MonexFraud.com and thus whether he caused harm to Monex.

### 6. Litigation Privilege

The Gilliams argue that they cannot be found liable for attempted extortion because the communication to Monex was protected under the litigation privilege found in California Civil Code section 47(b). "The litigation privilege . . . provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." Action Apartment Assoc., Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241 (2007). "This

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.'" Id. (quoting Silberg v. Anderson, 50 Cal. 3d 205, 216 (1990)). "'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'" Id. (quoting Silberg, 50 Cal. 3d at 212). "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" Id. (quoting Rusheen v. Cohen, 37 Cal. 4th 1048, 1057 (2006)). "In order to achieve this purpose of curtailing derivative lawsuits, [California courts] have given the litigation privilege a broad interpretation." Id. The litigation privilege "bars all tort causes of action except a claim of malicious prosecution." Flatley v. Mauro, 39 Cal. 4th 299, 322 (2006) (citing Hagberg v. Cal. Fed. Bank, 32 Cal. 4th 350, 360 (2004)).[7]

"To be protected by the litigation privilege, a communication must be 'in furtherance of the objects of the litigation.'" Action Apartment, 41 Cal. 4th at 1251 (quoting Silberg, 50 Cal. 3d at 219). "A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." Id. "The policy supporting the litigation privilege is furthered only if litigation is seriously considered." Id. "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." Id.

As the discussion of the intent element made clear (see supra Section II.B.i.3), with respect to Jason Gilliam the privilege is inapplicable because the evidence establishes that he was not making a settlement demand related to litigation that was contemplated in good faith and was under serious consideration.

---

[7] In Flately, the California Supreme Court assumed without deciding that extortion would be protected under the litigation privilege. See Flately, 39 Cal. 4th at 322. However, it is difficult to contemplate how conduct which is extortionate as a matter of law - which is the case both in Flately and here - could be reconciled with the application of the litigation privilege. See id. at 330. Thus, the Court would find the litigation privilege inapplicable in this case even if there were a legitimate settlement demand.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

With respect to Richard Gilliam, there remains a genuine issue of material fact with respect to his responsibility for the communication to Monex and thus consideration of the litigation privilege as applied to him is premature.

ii. <u>Intentional Interference with Prospective Economic Advantage</u>

The elements of intentional interference with prospective economic advantage are as follows: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. <u>See Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1153-54 (2003). Therefore, here Monex must establish that: (1) an economic relationship existed between Monex and at least one customer that had a probable future economic benefit to Monex; (2) the Gilliams had knowledge of the relationship; (3) the Gilliams acted intentionally and wrongfully to disrupt the relationship; (4) the relationship between Monex and its customer was actually disrupted; and (5) Monex experienced economic harm that was proximately caused by the Gilliams.

As discussed above, the Court disagrees with Monex that the Gilliams have conceded liability on the intentional interference with prospective economic advantage claim. Therefore, as it did with the attempted extortion claim, the Court will evaluate whether there are any genuine issues of material fact with respect to the elements of intentional interference with prospective economic advantage and then will consider whether the litigation privilege applies.

*1. An Economic Relationship Existed Between Monex and At Least One Customer That Had a Probable Future Economic Benefit to Monex*

There is no genuine issue of material fact that Monex had a relationship with at least one customer that had a probable future economic benefit to Monex. Monex has submitted the declaration of John Barton, a former Monex customer, that states he closed his account and opened an account with a Monex competitor after reading the negative information about Monex on MonexFraud.com. (<u>See</u> Barton Decl. ISO Monex MSJ ¶¶ 2-7.) He also states that if he had not seen the MonexFraud.com website, he "absolutely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

would have done more business with Monex." (<u>Id.</u> ¶ 4.) The Gilliams have not pointed to any evidence that would cast doubt on the validity of John Barton's declaration or otherwise create a genuine issue on this element.

*2. The Gilliams Had Knowledge of the Relationship*

Monex argues that the is no genuine issue with respect to this element because, as former customers of Monex, the Gilliams clearly knew that Monex had economic relationships with its customers. The Court agrees that the Gilliams' general knowledge that Monex had economic relationships with it customers is sufficient to satisfy this element. The California Court of Appeal has stated that it is "not persuaded knowledge of the injured party's specific identity or name is a prerequisite to recovery for [intentional interference with prospective economic advantage]." <u>Ramona</u> <u>Manor</u> <u>Convalescent</u> <u>Hosp.</u> <u>v.</u> <u>Care</u> <u>Enters.</u>, 177 Cal. App. 3d 1120, 1133 (Ct. App. 1986). The Ninth Circuit, in considering this element as it relates to intentional interference with contract, has similarly stated that "[w]hen the defendant performs the act that causes the interference, the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship." <u>Altera</u> <u>Corp.</u> <u>v.</u> <u>Clear</u> <u>Logic,</u> <u>Inc.</u>, 424 F.3d 1079, 1092 (9th Cir. 2005); <u>see</u> <u>also</u> <u>Transcription</u> <u>Commc'ns</u> <u>Corp.</u> <u>v.</u> <u>John</u> <u>Muir</u> <u>Health</u>, No. C 08-4418 TEH, 2009 WL 666943, at *10 (N.D. Cal. Mar. 13, 2009) (citing <u>Ramona</u> and <u>Altera</u> and concluding that the knowledge element of intentional interference with prospective economic advantage does not require specific knowledge of the relationship). Therefore, the Court concludes that this element is satisfied because of the undisputed fact that the Gilliams' knew Monex had economic relationships with its customers, even if they did not have specific knowledge of Monex's relationship with John Barton.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

*3. The Gilliams Acted Intentionally and Wrongfully to Disrupt the Relationship*

There is no genuine issue of material fact that Jason Gilliam intentionally tried to disrupt the relationship between Monex and its customers through the MonexFraud.com website. Jason Gilliam clearly admitted this fact in his deposition when he agreed that his "mission was to destroy Monex completely through a relentless marketing and awareness campaign." (J. Gilliam Dep. 81:11-14.) The same is not true, however, with respect to Richard Gilliam. This is because, as discussed under the causation element of both this claim and the attempted extortion claim, there is a genuine issue of material fact as to Richard Gilliam's involvement with the MonexFraud.com website. As the intentional acts that disrupted the relationship occurred through the website, it is necessary that Monex establish that Richard Gilliam's responsibility for the content of the website.

Monex argues that the intentional acts were independently wrongful because they constituted the tort of attempted extortion. Monex correctly states that an act is considered independently wrongful for purposes of intentional interference with prospective economic advantage if it is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Korea Supply, 29 Cal. 4th at 1159. As the Court has determined that Monex is entitled to summary judgment on its attempted extortion claim against Jason Gilliam, the independently wrongful requirement is satisfied with respect to him.

*4. The Relationship Between Monex and Its Customer was Actually Disrupted*

There is no genuine issue of material fact that Monex's relationship with at least one customer was disrupted. (See Barton Decl. ISO Monex MSJ ¶¶ 2-7.) The Gilliams have identified no evidence that would suggest otherwise.

*5. Monex Experienced Economic Harm That Was Proximately Caused by the Gilliams*

There is no genuine issue of material fact that Monex experienced economic harm, namely in the loss of John Barton's business. (See id.) The Gilliams have identified no evidence that would suggest otherwise. The Court does not, however, determine the exact amount of harm incurred by Monex.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

With respect to causation, the analysis of the causation element of the attempted extortion claim is applicable. (See supra Section II.B.i.5.) As with attempted extortion, the harm to Monex was caused by the MonexFraud.com website. (See id.) Therefore, whether the Gilliams caused the harm depends on whether they owned, operated, or contributed to MonexFraud.com. As the Court concluded above, there is no genuine issue of material fact that Jason Gilliam owned, operated, and contributed to MonexFraud.com and was responsible for the website. However, there is a genuine issue as to whether Richard Gilliam owned, operated, or contributed to MonexFraud.com.

### 6. Litigation Privilege

The Gilliams argue that the litigation privilege also shields them from liability for intentional interference with prospective economic advantage. The Gilliams are correct that the privilege has been extended to preclude liability for this tort. See Silberg, 50 Cal. 3d at 215 (citing Rosenthal v. Irell & Manella, 135 Cal. App. 3d 121 (Ct. App. 1982)). However, the Court agrees with Monex that the statements on MonexFraud.com that form the basis of their intentional interference claim would not be covered by the privilege. This is because the litigation privilege does not cover communications to "persons in no way connected with the proceeding." Fin. Corp. of Am. v. Wilburn, 189 Cal. App. 3d 764, 778 (Ct. App. 1987). In Financial Corp. of America, the California Court of Appeal held that statements made to "persons throughout Northern California" were not subject to the litigation privilege. Id. Likewise, statements made on a publicly-accessible website with over 47,000 "unique visitors" would not be covered by the litigation privilege. (See Andrews Decl. ISO Monex MSJ ¶ 7, Ex. E.) Therefore, to the extent the Gilliams seek to invoke the privilege to cover statements made on MonexFraud.com, the Court finds the litigation privilege is inapplicable.

### iii. Permanent Injunction

Monex requests the Court to enter a permanent injunction. The standard for determining whether a permanent injunction should be granted is "essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987). The Court finds, as it found previously, that the requirements for injunctive relief are met. (See Docket No. 87.) As Monex is entitled to summary judgment against Jason Gilliam on the extortion and intentional interference with prospective economic advantage claims, the Court will convert the preliminary injunction against Jason Gilliam into a permanent injunction.

      C. Jason Gilliam's Motion for Summary Judgment

      i. Cyberpiracy

      Jason Gilliam argues that he cannot liable under 15 U.S.C. § 1125(d) for two reasons. First, the statute requires trademark registration and Monex does not own a trademark on the name "Monex." Second, the MonexFraud.com website was not confusingly similar to Monex.com. The Court will address each argument in turn.

      *1. Trademark Registration / Ownership*

      Jason Gilliam appears to be making two distinct arguments with respect to the requirements of 15 U.S.C. § 1125(d). The first is that the statute requires that the injured party owns a registered trademark. The statute reads in relevant part that "[a] person shall be liable in a civil action by the owner of the mark . . . ." 15 U.S.C. § 1125(d)(1)(a). Jason Gilliam's reading of the statute is incorrect. "A trademark need not be registered to be entitled to protection under [15 U.S.C. § 1125(d)]." DiamlerChrysler v. The Net Inc., 388 F.3d 201, 205 (6th Cir. 2004) (citing Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 209 (2000); Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)).

      Jason Gilliam's second argument is that Monex cannot possibly own the mark "Monex" because other companies have registered trademarks of the word "Monex." However, a mark can have more than one owner and the Lanham Act permits concurrent registrations of the same mark, provided there is not likely to be confusion, mistake, or deception. See 15 U.S.C. § 1052(d); 4A Louis Altman and Malla Pollack, Callmann on Unfair Competition, Trademarks and Monopolies § 26:23 (4th ed. 2007). Jason Gilliam

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

implicitly acknowledges this fact by pointing out the various other companies in other industries that use the word "Monex" as a mark. Jason Gilliam has presented no evidence that another entity has the right to use the "Monex" mark to designate services related to trading in precious metals or lending funds for the purchase of precious metals. Additionally, Monex has submitted a declaration indicating that no other entity is using the "Monex" mark to designate those types of services. (See L. Carabini Decl. ISO Opp'n to J. Gilliam MSJ ¶ 3.)

### 2. Confusingly Similar

Jason Gilliam argues that there is a lack of confusion between Monex.com and MonexFraud.com. He has failed, however, to submit any evidence of such a lack of confusion, other than his personal opinion. The Court agrees with Monex that the similarity in domain names may have resulted in initial interest confusion. See Brookfield Coomc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1062 (9th Cir. 1999).

For these reasons, Jason Gilliam has failed to establish that he is entitled to summary judgment on the cyberpiracy claim.

### ii. Trade Secret Misappropriation

Jason Gilliam makes several arguments as to why he cannot be found liable for trade secret misappropriation. The Court will consider each argument in turn.

Jason Gilliam asserts that Monex has produced no evidence supporting its misappropriation claims other than a letter from an Assistant United States Attorney. The Court disagrees. Monex has responded with detailed citations to evidence in the record that supports its misappropriation claims. (See Opp'n Br. to J. Gilliam MSJ 8-11.) This evidence is sufficient to create genuine issues of material fact with respect to Monex's trade secret misappropriation claims.

Jason Gilliam also argues that the he has no knowledge of the original means of acquisition of the document that allegedly contained Monex trade secrets. However,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

knowledge of the original means of acquisition is not a required element under the statutes Monex has brought its misappropriation claim under. See Cal Civ. Code § 3426.1(b). Moreover, Monex has pointed to enough evidence to create a genuine issue as to whether Jason Gilliam knew or had reason to know that the trade secret was acquired by improper means or that he acquired it himself by improper means. First, the document was marked "Confidential Property of Monex." (Andrews Decl. ISO Opp'n to J. Gilliam MSJ, Ex. G.) Second, Jason Gilliam acknowledged in an email that the document "may have been taken without Monex's consent." (Id., Ex. C.) The notice on the document that it was "Confidential Property of Monex" also undercuts his argument that he had no knowledge that the document was a trade secret.

Jason Gilliam next argues that he cannot be liable for misappropriation because he returned the document to Monex because the Court ordered him to do so. Returning the document pursuant to this Court's order is not a defense to Monex's misappropriation claims. Also irrelevant are his arguments that he did not steal the document or perpetrate any act of industrial espionage, was never an employee or partner of Monex, had no commercial use for the information, and had never signed a non-disclosure agreement. Monex is not required to prove any of these things to establish its misappropriation claims.

Jason Gilliam's next argument is that the document had only a minimal commercial value because it was over three years old. Jason Gilliam has submitted no evidence to support his speculation that the age of the document would significantly reduce or eliminate its value. In contrast, Monex has provided a declaration from a Monex employee stating that the document contained valuable trade secrets. (Kochen Decl. ISO Opp'n to J. Gilliam MSJ ¶ 14.)

Jason Gilliam also argues that he has immunity to Monex's misappropriation claims under 18 U.S.C. § 1833(2). This statute relates to federal criminal law and has nothing to do with civil liability for trade secret misappropriation under California law.

Jason Gilliam's final argument is that Monex was negligent in protecting its trade secrets. He fails, however, to provide any evidence that Monex was negligent. In contrast

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

to Jason Gilliam's lack of evidence, Monex has provided a declaration from a Monex employee describing the measures the company takes to keep its customer information confidential. (Id. ¶ 15.)

For these reasons, Jason Gilliam has failed to establish that he is entitled to summary judgment on the trade secret misappropriation claims.

### iii. Attempted Extortion

Jason Gilliam argues that he cannot be liable for attempted extortion because of the litigation privilege. As discussed in detail above (see supra Section II.B.i.3 & 6), the Court finds that the litigation privilege does not apply.

### iv. Additional Arguments

Jason Gilliam's arguments that he cannot be liable for attempted extortion because he is the victim of an unconscionable contract or because Monex has allegedly extorted him are baseless and do not entitle him to summary judgment. Likewise, the Court agrees with Monex that the unclean hands defense is inapplicable here because all of Monex's claims are based on statutes that make certain conduct contrary to public policy. See Ticconi v. Blue Shield of Cal. Life & Health Ins. Co., 160 Cal. App. 4th 528, 543 (Ct. App. 2008) (holding that the unclean hands defense does not apply to conduct declared by statute to be void or against public policy). Even if it applied, Jason Gilliam has failed to provide evidence that Monex acted inequitably in the same transaction on which Monex is suing. See Watson v. Poore, 18 Cal. 2d 302, 313 (1941); Pond v. Ins. Co. of N. Am., 151 Cal. App. 3d 280, 290 (Ct. App. 1984) ("The [unclean hands] rule is qualified by the requirement that the party against whom the doctrine is sought be invoked directly 'infected' the actual cause of action before the court, and is not merely guilty of unrelated improper past conduct.").

### D. Richard Gilliam's Motion for Summary Judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

Richard Gilliam argues that he is entitled to summary judgment on the defamation and trade libel claims because he had no involvement with and no control over the MonexFraud.com website. As discussed above (see supra Section II.B.i.5), the Court finds that there is a genuine issue as to whether Richard Gilliam owned, operated, or contributed to MonexFraud.com and was thus responsible for the website.

In its Opposition to Richard Gilliam's motion, Monex highlights the evidence concerning his financial support of MonexFraud.com. (See Opp'n Br. to R. Gilliam MSJ 4-5.) In his deposition, Richard Gilliam testified that it was possible that he had paid the bills for MonexFraud.com, but that he did not have a specific memory of doing so. (R. Gilliam Dep. 46:22-47:16.) Jason Gilliam claims he paid MonexFraud.com expenses with his own credit card. (See R. Gilliam Mot. Br., Ex. A, J. Gilliam Decl. Re: MonexFraud.com Ownership ¶ 2.) To counter this evidence, Monex points to evidence that suggests the Gilliams have joint finances, including that they have a joint PayPal account (R. Gilliam Dep. 56:9-13) and had a joint Monex investment account (id. 24:13-21). The Court finds that there is a genuine issue as to whether Richard Gilliam provided financial support to MonexFraud.com.

Richard Gilliam also argues that he cannot be held liable for the actions of his adult son. This argument is irrelevant, since Monex is not attempting to hold him liable for Jason Gilliam's actions.

Richard Gilliam asserts that his posting of comments to YouTube regarding Monex (see R. Gilliam Dep. 47:20-49:3) were true and therefore cannot form the basis of a defamation claim. The Court cannot evaluate this argument as Richard Gilliam has not provided it with any evidence establishing what he wrote in the comments or why these comments were true.

Richard Gilliam next argues that he cannot be liable for various other Monex claims against him because they are all based upon the defamation claim.[8] However, as

---

[8] Richard Gilliam also argues in this section that he cannot be liable for any claims using extortion as the basis for liability because he never received money from Monex. The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|

| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. |
|---|---|

Richard Gilliam is not entitled to summary judgment on the defamation claim, this argument fails.

Richard Gilliam's final arguments are that Monex should be estopped from bringing their claims because they waited six months after the creation of MonexFraud.com before suing the Gilliams and that Monex's silence is proof that they consented to the accuracy of statements on MonexFraud.com.[9] The estoppel by silence argument fails because Monex was under no duty to speak. See People v. Ocean Shore R.R., Inc., 32 Cal. 2d 406, 421-22 (1948) ("An estoppel may arise from silence, but only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak and, knowing that the circumstances require him to speak, remains silent."); accord Moore v. State Bd. of Control, 113 Cal. App. 4th 371, 384 (Ct. App. 2003); Hill v. Newkirk, 26 Cal. App. 4th 1047, 1058 (Ct. App. 1994). As for the consent by silence argument, Richard Gilliam provides no authority, and the Court does not believe any authority exists, for the proposition that silence regarding statements posted to a website constitutes consent to their validity.

III.    Conclusion

For the foregoing reasons, the Court DENIES Jason Gilliam's and Richard Gilliam's motions for summary judgment.

The Court GRANTS Monex's motion for summary judgment with respect to Jason Gilliam. The Court DENIES Monex's motion for summary judgment with respect to Richard Gilliam.

The Court GRANTS Monex's motion for summary adjudication with respect to

---

rejected this argument when it ruled that Monex can bring a claim for attempted extortion in this case. (See Docket No. 174.)

[9] Although found in Richard Gilliam's MSJ, these argument are styled as applying to all defendants. (R. Gilliam Mot. Br. 5-7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-287 JVS (RNBx) | Date | December 3, 2009 |
|---|---|---|---|
| Title | Monex Deposit Co., et al. v. Jason Gilliam, et al. | | |

Richard Gilliam on the following elements of the attempted extortion claim:

- The written communication expressed threats listed in California Penal Code section 519.
- Monex was harmed by MonexFraud.com.

The Court also GRANTS Monex's summary adjudication motion with respect to Richard Gilliam on the following elements of the intentional interference with prospective economic advantage:

- Monex had a relationship with a least one customer that had a probable future economic benefit to Monex.
- The Gilliams had knowledge of the relationships that Monex had with its customers.
- The relationship between Monex and its customer was actually disrupted.

Monex requests the entry of judgment pursuant to Federal Rule of Civil Procedure 54(b). In view of Monex's willingness to waive damages (Monex Mot. Br. 23), the Court is prepared to enter judgment against Jason Gilliam on the extortion claim at this time. This will allow for appellate review of the key legal issues in this case. Monex shall submit a form of judgment on that claim, including a permanent injunction, within seven days. The Court will allow seven days for any objections to the form of the proposed judgment.

IT IS SO ORDERED.

| | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | nkb | | |