1  Neil A. Goteiner (State Bar No. 83524)
       ngoteiner@fbm.com
2  Scott Andrews (State Bar No. 243690)
       sandrews@fbm.com
3  FARELLA BRAUN + MARTEL LLP
   235 Montgomery Street                              JS-6
4  San Francisco, CA  94104
   Telephone:  (415) 954-4400
5  Facsimile:   (415) 954-4480

6  Attorneys for Plaintiffs
   MONEX DEPOSIT COMPANY and MONEX
7  CREDIT COMPANY

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                 (SOUTHERN DIVISION – SANTA ANA)

11

12  MONEX DEPOSIT CO., et al.,          Case No.  SACV 09-287-JVS(RNBx)

13              Plaintiffs,             **JUDGMENT AND PERMANENT**
                                        **INJUNCTION UNDER FEDERAL**
14  v.                                  **RULE OF CIVIL PROCEDURE**
                                        **54(b) IN FAVOR OF PLAINTIFFS**
15  JASON GILLIAM, et al.,              **MONEX DEPOSIT CO. AND**
                                        **MONEX CREDIT CO., AND**
16              Defendants,             **AGAINST DEFENDANTS**
                                        **RICHARD AND JASON GILLIAM**
17

18

19

20                                      The Hon. James V. Selna
    AND RELATED COUNTERCLAIMS.
21

22        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment

23  be entered against defendants Jason and Richard Gilliam (collectively, the

24  "Gilliams") and in favor of plaintiffs Monex Deposit Co. and Monex Credit Co.

25  (collectively, "Monex") on plaintiffs' claims of intentional interference with

26  prospective economic advantage, negligent interference with prospective economic

27  advantage, intentional interference with contractual relations, unfair business

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

23587\2214755.1

practices (Cal. Bus. & Prof. Code § 17200 *et seq.*), civil racketeering (18 U.S.C. §§ 1961–1968), and cyberpiracy (15 U.S.C. § 1125(d)).

IN ADDITION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered against defendant Richard Gilliam and in favor of Monex on plaintiffs' extortion claim.

## FINDINGS OF FACT

The Court finds the following facts:

1.     Monex trades in precious metals, transacting sales and purchases with members of the public, often pursuant to contracts.

2.     Monex has used the word "Monex" to mark its products, services, and business in the precious metals industry for many years.

3.     The Gilliams were the owners, users, registrants, and operators of, and contributors to, the web site www.MonexFraud.com.

4.     The Gilliams published on the web site statements that Monex did not have title to, or the ability to deliver, precious metals sold under contract to Monex customers; that Monex was expelled from the National Futures Association for fraud; that Monex operated as a boiler room; that Monex violated federal or state statutes regulating the business operations of Monex; that Monex was charged by the Internal Revenue Service with tax evasion; and that Monex failed to disclose accurately to customers account and trading terms.

5.     The web site included paid advertising for Monex's competitors and solicitation for donations to the Gilliams.

6.     Monex's relationships with its potential customers and active customers, including John Barton, had a probable future economic benefit to Monex.

7.     The Gilliams knew of the economic relationships and contracts Monex had with its customers and potential customers in part because the Gilliams had

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)          - 2 -                              23587\2214755.1

been Monex customers themselves and entered into contracts with Monex, governing their trading activities.

8.      The Gilliams intentionally tried to disrupt, through their publication of the MonexFraud.com web site, the relationships between Monex and its potential and active customers.

9.      The Gilliams' intentional attempts to disrupt these relationships were independently wrongful because those attempts were part of their attempt to extort $15 million to $20 million from Monex, for which they are independently liable, for the reasons set forth below and in the document titled Amended Judgment On Extortion In Favor Of Monex Deposit Co. And Monex Credit Co., And Against Jason Gilliam; Permanent Injunction; Order Allowing Judgment Under Federal Rule Of Civil Procedure 54(b) (Dkt. 356).

10.     Mr. Barton decided not to do further business with Monex because he read allegations about Monex on www.MonexFraud.com.  The Gilliams therefore interrupted Monex's economic relationship with Mr. Barton.  Mr. Barton went on to do business with one of Monex's competitors.  He said he would have conducted this business with Monex had www.MonexFraud.com (and therefore the Gilliams) not influenced him.  The Gilliams and MonexFraud.com also disrupted Monex's relationships with other potential and active customers.

11.     The Gilliams and MonexFraud.com economically harmed Monex by causing it to lose business, including that of Mr. Barton.

12.     If the domain name www.MonexFraud.com remains open to abuse, Monex will be vulnerable to future attack.

13.     On February 13, 2009, the Gilliams delivered a written correspondence to Monex in the form of a demand letter and a "Plan of Action."

14.     The letter and "Plan of Action" expressed and implied threats listed in California Penal Code Section 519, including publicly to accuse Monex of crimes, to expose Monex's alleged crimes, to expose Monex secrets, such as a Monex

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)                - 3 -                     23587\2214755.1

"Position Report" document containing trade secrets, and to do unlawful injuries to Monex (*e.g.*, intentional interference with prospective economic advantage, intentional interference with contractual relations, racketeering, and unfair business practices).  The Gilliams stated and implied in the letter and "Plan of Action" that they would carry out their threats unless Monex paid $15 million to them or to one of their confederates with whom they were working.

15.    Richard Gilliam made oral, extortionate threats against Monex similar to those in the letter and "Plan of Action" (and listed in California Penal Code Section 519) during a meeting with Harvey Kochen, a Monex employee, on March 19, 2009.  Richard Gilliam said the Gilliams would carry out those threats unless Monex paid them or one of their confederates $20 million.

16.    The Gilliams intended to use fear created by the Section 519 threats in order to extort a payment of $15 million to $20 million from Monex to them or one or more confederates.

17.    MonexFraud.com was an integral part of the Gilliams' attempted extortion because their written communications that they delivered to Monex, and Richard Gilliam's oral threats, stated that more negative information about the company would be posted to the web site if their demands were not satisfied, and because such threats were, in fact, carried out.

18.    The Gilliams did not intend to bring a lawsuit against Monex at the time they delivered the letter and "Plan of Action" to Monex, or made the oral threats.

19.    Statements in the letter and "Plan of Action" suggesting the Gilliams' intent to litigate were fabrications, removing any doubt that the Gilliams intended to use fear created by the Section 519 threats to extort money from Monex.

20.    Addressing such fabrications, first, Jason Gilliam admitted that there were never 234 people seeking recovery from Monex and, in fact, that 184 of these people came from an apparently misappropriated Monex "Position Report"

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 4 -

23587\2214755.1

document listing these investors.  None of these 184 people asked Jason Gilliam to represent them.  Jason Gilliam did not know whether these people wanted any money from Monex.  As for the remaining, approximately 50 people, Jason Gilliam had not spoken to all of them.  He did not have any documented proof of their losses.  He refused to identify those people at his deposition.  He provided no evidence to support his statements in the letter that he represented 234 people or that the Gilliams had a valid basis to demand $15 million to $20 million from Monex.  That amount was far in excess of the losses allegedly incurred by the Gilliams, now-dismissed defendant Steven Bowman, and seven people who submitted declarations indicating they may have contemplated suing Monex.

21.    Second, there is no evidence to support the Gilliams' reference in the written correspondence to two former Monex account representatives willing to testify regarding Monex's allegedly illegal activities.

22.    The only former Monex account representative the Gilliams produced for deposition did not testify to facts that supported the allegations made in the letter and "Plan of Action" regarding Monex's allegedly illegal conduct.

23.    Third, there is no evidence to support the statement in the letter and "Plan of Action" that Monex had breached the standard Atlas Agreement it entered into with its customers.

24.    Fourth, there is no evidence that www.MonexFraud.com was a central hub for a class action effort against Monex.

25.    There was no class action effort against Monex connected to any defendant or to www.MonexFraud.com.  The Gilliams never brought such a class action and, in fact, Jason Gilliam said he would not have joined a class action suit against Monex.

26.    Neither Jason or Richard Gilliam nor any one else working with them made a settlement demand of Monex that was related to litigation that any of them contemplated in good faith and had under serious consideration.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)                    - 5 -                    23587\2214755.1

27.     The Gilliams began publishing www.MonexFraud.com on, at the latest, August 31, 2008.  Publication ceased on or about March 26, 2009.

28.     The Gilliams caused Monex to lose $1 million in sales per week for each week they operated www.MonexFraud.com.   This amount is based upon a) the Gilliams' testimony that Jason Gilliam had detailed and frequent communications with investors who had read MonexFraud.com and therefore decided not to do business with Monex , b) Jason Gilliam's published estimates that defendants were causing $1 million in lost business per week, c) Jason Gilliam's testimony that the $1 million per week estimate was reasonable and was based on deep factual research, and d) corroborating evidence that $1 million per week was a reasonable estimate because of the ease by which customers and potential customers could choose one of Monex's competitors instead of Monex after reading the negative information about Monex at www.MonexFraud.com, and due to their likely motivation to avoid the Monex described there, given the already high risk of investing in precious metals.  In addition, the $1 million in lost business a week is supported by the website's large readership and high visibility due to the Gilliams' deliberate success in placing Monexfraud.com just after Monex's entry on the Google search engine.  Finally, the $ 1 million weekly losses is also supported by the fact that Monex's average transaction size across its customer base from 2004 through 2009 was $44,998.  Only 23 lost transactions per week would cause Monex to suffer the weekly $1 million in lost business claimed by the Gilliams.

29.     The website's operation therefore caused Monex to lose $29 million in sales over the website's 29 weeks of operations.

30.     More precise proof of the amount of lost sales is not possible due to the Gilliams' own efforts to turn customers and potential customers against Monex, thus depriving Monex of the opportunity to identify and debrief those lost customers and potential customers.

31.     For every $1 million that the Gilliams cost Monex in lost transactions,

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 6 -

23587\2214755.1

Monex lost gross profits of approximately $21,150.  Monex has demonstrated these lost gross profits based on Monex's historic gross profit margin of 1.41 percent and its historic percentage of 50 percent of all its customers doing repeat transactions. The amount of Monex's total lost gross profits which the Gilliams unlawfully caused Monex was $613,350 — 29 weeks of costing Monex $1 million in lost transactions per week and $21,150 in gross profits each week.

32.    Monex was unable to reduce or redeploy any significant amount of its fixed costs for the proportion of its business that the Gilliams' unlawful activities cost Monex.

33.    Jason Gilliam removed this action from California state court.  Richard Gilliam joined in that removal.

34.    The First Amended Complaint contains the following claims based on federal statutes, each of which remains pending:  civil racketeering and cyberpiracy. That complaint also contains the following claims under California law, each of which remains pending:  extortion, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, unfair business practices, and intentional interference with contractual relations.

35.    The Court stayed the Gilliams' counterclaims against Monex and ordered that the Gilliams can only pursue them in arbitration.

36.    Neither Jason nor Richard Gilliam retracted their extortionate demands or threats:  (a) to publish additional negative material about Monex on MonexFraud.com and otherwise, (b) to report Monex's activities to government and the news media, and (c) to continue to do so, unless Monex paid them $15 million to $20 million.

37.    In litigating this matter, Monex paid Farella Braun + Martel LLP $1,114,590.99 in costs and attorney's fees.

38.    The cost of the expenses for which Monex paid was consistent with prevailing market rates in California for the type of services rendered, in light of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 7 -

23587\2214755.1

1   complex legal issues in this matter and additional work made necessary by dealing

2   with the Gilliams' procedural tactics, for which the Court and Magistrate Judge

3   Block collectively twice sanctioned them.

4        39.    Monex's counsel's work included extensive factual and legal research,

5   applications for a temporary restraining order and a preliminary injunction, two

6   motions to dismiss, three motions for summary judgment, two motions to compel

7   arbitration, multiple sanctions issues, searching for Mr. Bowman (the missing

8   Canadian defendant), speaking with so-called witnesses identified by defendants,

9   two motions to compel discovery, dealing with web-services providers, extensive

10   efforts to purge the Internet of the extortionate publications that violated the

11   preliminary injunctions, communications with clients and client employees,

12   strategizing to attempt to mitigate harm to Monex, communications with

13   defendants, discovery work, including depositions and document review, and

14   responses to the press.

15        40.    The issues of law included whether a private right of action exists for

16   attempted extortion, limits on First Amendment protections for extortionate speech,

17   and the alleged unconscionability of an arbitration agreement under new California

18   case law.

19        41.    All attorneys and professionals on this matter billed Monex at their

20   usual and standard rates, which were consistent with prevailing California rates for

21   similar quality of services.

22        42.    The number of hours that Monex's counsel and other legal

23   professional staff members spent on this litigation was necessary to achieving the

24   results Monex obtained.

25        43.    The Gilliams have been sanctioned with entry of default and their

26   answers have been stricken.

27        44.    Unless the Court enjoins the Gilliams' tortious conduct, they are likely

28   to publish negative material about Monex, including on MonexFraud.com or a

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)
- 8 -
23587\2214755.1

1   similar website, and to keep their extortionate threats in place, because Monex

2   refused to pay them.

3        45.     Such negative statements, particularly on the web, are likely to harm

4   Monex by damaging its reputation, customer relationships, business, revenues, and

5   goodwill.

6        46.     Such harm will not be fully compensable through money damages

7   because the full amount of damage will not be determinable with sufficient

8   precision.

9        47.     A judgment on Monex's remaining claims now, instead of waiting

10   until the Gilliams' counterclaims are resolved, will allow Monex to obtain prompt

11   compensation and will not make adjudication of the counterclaims any less

12   efficient.  The Gilliams have made no effort to pursue arbitration of their

13   counterclaims in the eleven months since arbitration was first compelled.  Monex

14   should not have to wait until the end of the arbitration (which may never come) to

15   receive compensation.

16   **CONCLUSIONS OF LAW**

17        1.     The Court has jurisdiction over Monex and the Gilliams, and over the

18   subject matter of this civil action.

19        2.     The facts alleged in Monex's First Amended Complaint that concern

20   their still-pending claims were established by the Court's entry of default against

21   the Gilliams.

22        3.     California Penal Code Section 523 implies a civil cause of action for

23   attempted extortion, and the provisions of California Penal Code Section 519 are

24   incorporated within that cause of action.

25        4.     Richard Gilliam sent and delivered to Monex written correspondence,

26   and he made to Monex oral communications, that expressed and implied threats to

27   commit intentional interference with prospective economic advantages and other

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 9 -

23587\2214755.1

1   torts against Monex, which are unlawful injuries; to accuse Monex of crimes in the

2   operation of its business; to expose and impute to Monex unethical business

3   practices and crime; and to expose secrets, such as confidential, trade-secret

4   customer information, that affect Monex and its customers.

5        5.     Richard Gilliam intentionally made those threats to obtain property

6   from Monex with its consent.

7        6.     These threats, and the scheme and actions that supported them harmed

8   Monex.  Richard Gilliam caused that harm.

9        7.     Contracts existed between Monex and its customers that governed

10  their precious-metals trading relationships.

11       8.     The Gilliams knew that such contracts existed.

12       9.     The Gilliams engaged in acts that either caused customers who were

13  parties to contracts with Monex to breach those contracts or caused Monex's

14  performance of those contracts to become more expensive and burdensome.

15       10.    The Gilliams either intended to cause Monex's performance to be

16  more expensive or burdensome, knew that their acts were at least substantially

17  certain to make Monex's performance more expensive and burdensome, intended to

18  cause Monex's customers to breach their contracts with Monex, or knew that their

19  acts were at least substantially certain to cause customers who were parties to

20  contracts with Monex to breach those contracts.

21       11.    The Gilliams' acts that interfered with Monex's contractual relations

22  damaged Monex.

23       12.    Monex and its customers had non-contractual, economic relationships

24  that had probable future economic benefits to Monex.

25       13.    The Gilliams had knowledge of those relationships.

26       14.    The Gilliams committed intentional wrongful acts, such as extortion,

27  that were designed to disrupt those relationships.

28       15.    It was reasonably foreseeable that the Gilliams' website publications

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)                    - 10 -                    23587\2214755.1

1  would interfere with or disrupt such relationships if the Gilliams failed to exercise

2  due care.  The Gilliams failed to exercise due care.

3      16.    The Gilliams and their website publications actually disrupted and

4  interfered with such economic relationships.

5      17.    Such disruption and interference proximately harmed Monex

6  economically as set forth above.

7      18.    The Gilliams torts, including extortion, were part of an effort by them

8  to obtain money from advertising revenue, donations, and extortion payments.

9      19.    Monex owns the trademark, service mark, trade name, and commercial

10  name "Monex" when used in relation to precious metals.

11      20.    The Gilliams registered and used the domain name

12  www.MonexFraud.com.

13      21.    That domain is confusingly similar to the "Monex" mark.

14      22.    The "Monex" mark was distinctive and famous at the time of

15  registration and use of the domain name.

16      23.    The domain name www.MonexFraud.com was dilutive of the

17  "Monex" mark.

18      24.    The Gilliams had a bad faith intent to profit from the "Monex" mark

19  by using it in the www.MonexFraud.com domain name to advance their extortion

20  scheme.

21      25.    Both Richard and Jason Gilliam were responsible for use of

22  www.MonexFraud.com.

23      26.    The Gilliams, through a pattern of two or more acts and threats

24  involving extortion and indictable under 18 U.S.C. §§ 1343, 1344, 1951, and/or

25  1952, and constituting racketeering activity, directly and indirectly invested in,

26  maintained interests in, and participated in the conduct of an enterprise, the

27  activities of which affected interstate and foreign commerce.

28      27.    Monex was injured in its business and property by reason of such

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 11 -

23587\2214755.1

conduct.

28.     The Gilliams' negative statements about Monex on MonexFraud.com and threats to Monex to make such statements absent payment, whether true or false, were never, and never could be, protected by the federal or California constitutions' free-speech guaranties because these threats and statements were unlawful speech made with the intent to extort.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 420, 112 S. Ct. 2538, 2563 (1992) (conc. opn. of Stevens, J.) ("Although the First Amendment broadly protects 'speech,' it does not protect the right to ... 'extort.'"); *Flatley v. Mauro*, 39 Cal. 4th 299, 328, 139 P.3d 2, 21 (2006); *People v. Choynski*, 95 Cal. 640, 642–43, 30 P. 791 (1892); *People v. Umana*, 138 Cal. App. 4th 625, 638, 41 Cal. Rptr. 3d 573, 582 (2006); *Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal. App. 3d 1058, 267 Cal. Rptr. 457 (1990). Even if Jason or Richard Gilliam would have been within his rights to obtain money from Monex for himself or others, or to make the statements he made publicly and to government officials concerning Monex, he committed attempted extortion by combining the threats to make these statements with the demand for money.  *See Flatley*, 39 Cal. 4th at 326; *accord Gomez v. Garcia*, 81 F.3d 95, 97 (9th Cir. 1996); *People v. Tufunga*, 21 Cal. 4th 935, 955, 987 P.2d 168 (1999); *Lindenbaum v. State Bar*, 26 Cal. 2d 565, 573, 160 P.2d 9 (1945).

29.     The litigation privilege of California Civil Code Section 47(b)(2) does not protect Jason or Richard Gilliam from liability because neither they nor any one else working with them made a settlement demand related to litigation that any of them contemplated in good faith and had under serious consideration.

30.     The balance of equities in considering entry of a permanent injunction tips in Monex's favor.

31.     This permanent injunction is in the public interest.

32.     This judgment, insofar as it does not address the Gilliams' counterclaims against Monex but addresses all Monex's remaining claims, settles

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)                    - 12 -                    23587\2214755.1

1   fewer than all the claims in this multi-claim lawsuit.  This order is the ultimate

2   disposition of Monex's remaining claims against the Gilliams.

3       33.   There is no just reason to delay entry of judgment against the Gilliams

4   on Monex's remaining claims.

5       34.   An award of reasonable attorney's fees and expenses is mandatory for

6   the RICO claim and claims related to it.

7       35.   The amount of attorney's fees awarded is reasonable in light of the

8   procedural intensity of this case, the novel legal issues in it, and Monex's decision

9   to seek less than 50 percent of the fees and expenses it actually paid in connection

10   with this case.

11       36.   The rates and expenses charged by Monex's counsel and for which

12   Monex seeks recovery are reasonable in light of the prevailing market for litigation

13   services charged by similar commercial law firms in California.

14       37.   The number of hours billed by Monex for which it is recovering a fee

15   award is reasonable in light of the tasks counsel had to perform to achieve the

16   results Monex obtained.

17       38.   The amount of fees awarded is for work that furthered Monex's civil

18   racketeering claim.  This work included areas that largely overlapped with other of

19   Monex's claims, such as the extortion claim.  (Extortion was the predicate offense

20   for the racketeering violation.)  Monex has discounted its request for attorney's fees

21   by more than 50 percent from the total Monex paid to its lawyers, resulting in

22   Monex not recovering attorney's fees for any work that may have been done solely

23   on issues unrelated to racketeering.

24       39.   Monex adequately supported its request for attorney's fees with

25   detailed summaries of the number of hours worked by various attorneys and other

26   timekeepers, and their rates, for various phases of this litigation.

27       40.   The $613,350 in actual damages Monex seeks is just and reasonable in

28   light of the evidence available and the Gilliams' actions in preventing more precise

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)                - 13 -                23587\2214755.1

evidence of the amount of damages.

41.     The $613,350 in actual damages were all attributable to the Gilliams' racketeering, because this money was lost due to the effects of a website that the Gilliams operated as a central tool of their extortionate, racketeering enterprise.

42.     Gross profits is the proper measure of damages here because Monex was unable to reduce or redeploy any significant amount of its fixed costs for the proportion of its business lost due to the Gilliams' unlawful activities.

43.     The $613,350 in actual damages Monex seeks must be trebled under the RICO statutes, for a total of $1,840,050.

44.     Monex is the prevailing party in this litigation against both Jason and Richard Gilliam.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:

Plaintiffs Monex Deposit Co. and Monex Credit Co. recover from defendants the Gilliams the amount of $2,352,317, including  prejudgment interest at the rate of 2%, plus post-judgment interest at the rate of 0.36%, along with costs to be calculated by the Clerk upon application by plaintiffs.  These liabilities shall be owed jointly and severally by the Gilliams and payable to Monex Deposit Co. and/or Monex Credit Co., with payment distributed between them as they choose. The $2,352,317 amount of the recovery consists of the following just and reasonable amounts:

- Compensatory damages, after mandatory trebling pursuant to 18 U.S.C. § 1964(c), of a final total of $1,840,050 (based on actual damages of $613,350);
- Mandatory, reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c) totaling $500,000, for work done in furtherance of the civil racketeering claim; and
- Prejudgment interest totaling $12,267, in order to ensure full compensation to Monex, for the damage done by the racketeering.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 14 -

23587\2214755.1

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:

The domain name www.MonexFraud.com be transferred to Monex Deposit Co., Monex Credit Co., or both, (at their option) because they are the owners of the "Monex" mark in the context of precious metals. *See* 15 U.S.C. § 1125(d)(1)(C). Any registrar administering that domain name, including GoDaddy.com, Inc. (the registrar as of April 9, 2010) shall promptly take reasonable steps to transfer control of the domain to Monex, including from Jason Gilliam (its current registrant). The Gilliams shall do everything required of them to transfer the domain, if anything, within seven calendar days of entry of this judgment.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:

Richard Gilliam and anyone acting in concert or in participation with him, including as his agent, servant, employee, attorney, representative, partner, joint venturer or otherwise on his behalf, who receives notice of this order or its contents by any means, ARE HEREBY PERMANENTLY RESTRAINED, ENJOINED, AND PROHIBITED FROM:

      i.     Any effort to extort consideration from Monex, payable to anyone or any organization, including any effort to persuade Monex to pay any money, if such effort directly or indirectly involves: (1) any threat to publish a negative statement, whether true or false, about Monex or its employees in any forum or to share such information about Monex with third parties, or (2) any threat to criticize Monex or its employees, or (3) publishing any negative statement or criticism, or secret, with respect of Monex or its employees, whether true or false.

      ii.    Operating, directly or indirectly, www.MonexFraud.com or any other website address or publication using the name Monex in combination with any modifier which implies illegal, unlawful, unethical, immoral, or otherwise improper conduct, whether such accusation against Monex be true or false. The Court grants this relief because www.MonexFraud.com was

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 15 -

23587\2214755.1

one of the specific instrumentalities used by the Gilliams to carry out their scheme to extort, and the Court finds it proper to enjoin the operation of www.MonexFraud.com and such other sites as the Gilliams might use as a surrogate for www.MonexFraud.com.  *Cf. Balboa Island Village, Inc. v. Lemen*, 40 Cal. 4th 1141, 1156, 1162 (2007); *Evans v. Evans*, 162 Cal. App. 4th 1157, 1168 (2008).

iii.    Publishing or republishing on any website, including, but not limited to, www.MonexFraud.com, www.youtube.com, http://digg.com, http://goldismoney.info, and http://americannepali.blogspot.com, or in any other manner or forum:  statements that Monex does not have title to, or the ability to deliver, precious metals sold under contract to any Monex customer; that Monex was expelled from the National Futures Association for fraud; that Monex operates as a boiler room; that Monex violates any federal or state statutes regulating the business operations of Monex; that Monex has been charged by the Internal Revenue Service with tax evasion; and that Monex fails to disclose accurately to customers account and trading terms (collectively "Prohibited Statements").  The Court finds that the Gilliams used these specific statements in their scheme to extort Monex, and thus it is proper to enjoin Richard Gilliam from repeating these statements. *Cf. Balboa Island Village*, 40 Cal. 4th at 1162 ("a properly limited injunction prohibiting defendant from repeating statements about plaintiff that were determined at trial to be defamatory would not violate defendant's right to free speech"); *Evans*, 162 Cal. App. 4th at 1168–69.  This part of the order requires removal of the following, within 72 hours of the entry of this judgment, from any website or other publication over which Richard Gilliam or anyone covered by this injunction has sufficient control to influence such website or publication:  Prohibited Statements that they have published or republished there.  This part of the order also requires stopping the use the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 16 -

23587\2214755.1

1    word MonexFraud, or any variant thereof, within 72 hours of the entry of this

2    judgment.

3             iv.    Disclosing or using directly or indirectly in any way any trade

4    secrets or other proprietary information belonging to Monex, including all

5    internal Monex documents which are not public, such as Monex customer

6    lists and Monex customer position reports.

7             v.    Retaining any trade secret or proprietary information referred to

8    in the last paragraph.  To implement this part of the judgment, Richard

9    Gilliam and anyone covered by this injunction must disclose to and return to

10   Monex within 48 hours of entry of this judgment and permanent injunction

11   all such information and documentation within their possession, or within the

12   possession of anyone under their control.  To the extent that Richard Gilliam

13   and anyone covered by this injunction once had possession of such

14   documentation, but no longer has possession, they must, within the same 48-

15   hour period, also inform Monex's counsel of the following, in writing and in

16   detail sufficient to allow Monex to use it to take effective steps to recover the

17   documentation:  (1) all efforts made to re-acquire such documentation; (2)

18   what became of such documentation, including the time and date they lost

19   control of the documentation; and (3) who presently has possession of this

20   documentation.

21        **Notwithstanding any other provision of this Order, nothing herein shall**

22   **prohibit Richard Gilliam from (a) making statements regarding his own**

23   **business dealings with Monex, including any losses he may have sustained, or**

24   **(b) communicating with any governmental entity concerning matters within**

25   **the scope of that entity's legislative, administrative, or regulatory**

26   **responsibilities.**

27        The Court issues the foregoing permanent injunction based on 1) the Court's

28   order granting summary judgment against Jason Gilliam on Monex's claims of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)                  - 17 -                          23587\2214755.1

1  extortion and intentional interference with prospective economic advantage against

2  him, 2) the Court's order granting summary adjudication of elements of those

3  claims against Richard Gilliam, 3) the final pretrial conference order, 4) the motion

4  for sanctions and entry of default, and 5) the motion for entry of default judgment.

5       The Court shall retain jurisdiction over this action for purposes of construing

6  and enforcing the terms of this judgment and permanent injunction, and for

7  punishing violations thereof.

8

9  Dated: June 01, 2010  _____

10                         Judge James V. Selna
                       United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

[PROPOSED] JUDGMENT
CASE NO. SACV 09-287-JVS(RNBx)

- 18 -

23587\2214755.1